**Larry PLUNKETT, Petitioner-Appellant,**

v.

**W.J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

No. 82–1096.

United States Court of Appeals, Fifth Circuit.

July 22, 1983.

Rehearing and Rehearing En Banc Denied Sept. 30, 1983.

Danny C. Burns, Fort Worth, Tex., for petitioner-appellant.

Mark White, Atty. Gen., Maury Hexamer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, GOLDBERG and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

## I.

This is an appeal from a denial without an evidentiary hearing of a state prisoner's habeas petition. Convicted of the murder of a two year-old child, petitioner brings to this court two errors assertedly of constitutional dimension. Finding merit, we reverse.

An autopsy of two year-old April Dawn Peters found extensive bruising over virtually her entire body. She had suffered a y-shaped fracture to her skull. Her heart, liver, spleen and pancreas had been severely torn. Either the head or abdominal injuries would have caused death; the fracture occurred about one hour before the abdominal injuries. The bruises were less than twenty-four hours old.

Larry Plunkett, who lived with April's mother from time to time, was with April when she died. He explained that he had heard a thump and found April lying in the bedroom with her feet on the bed and her head on the carpeted floor. He described his extensive efforts to resuscitate, including direct heart massage, accomplished by forceful application of the hands to the chestwall. He did not explain the lapse of one hour from the time of the head injury to the suffering of abdominal injury.

A Palo Pinto grand jury indicted Plunkett, charging in two counts that

█ ] Larry Plunkett, on or about the 8th day of January, A.D.1975, and before the presentment of this indictment, in said County and State, did then and there intentionally and knowingly cause the death of an individual, April Dawn Peters, by striking her with his hands;

█ ] And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 8th day of January, A.D., 1975, in said county and state and anterior to the presentment of this indictment, Larry Plunkett did then and there recklessly cause the death of an individual, April Dawn Peters, by striking her with his hands; ...

He was convicted upon Count 1 of murder and sentenced by the same jury to fifty years in prison. His conviction was affirmed by the Texas Court of Criminal Appeals. *Plunkett v. State*, 580 S.W.2d 815 (Tex.Cr.App.1979). The United States District Court, adopting the recommendations of a magistrate, denied Plunkett's federal habeas petition without an evidentiary hearing. Here he contends that his conviction was unconstitutionally obtained for two reasons. First, he argues that the court's charge allowed the jury to convict for an offense not charged in the indictment. Second, he argues that he was deprived of a fair trial when the prosecutor argued the uncharged offense in closing the case.

The pertinent statutes provide:

(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; ...

Tex.Penal Code § 19.02. The trial judge in the opening paragraph of his five pages of charge told the jury:

Our law provides that a person commits murder if he intentionally or know-

ingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

The charge later stated:

Now if you find and believe from the evidence beyond a reasonable doubt that on or about the 8th day of January, 1975, in Palo Pinto County, Texas, the defendant, Larry Plunkett, did intentionally or knowingly cause the death of an individual, April Dawn Peters, by striking her with his hands, as set forth in the indictment, then you will find the defendant guilty of murder as charged in the indictment.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and find him not guilty of murder and consider whether he is guilty of the lesser offense of involuntary manslaughter.

You are instructed that to be guilty of murder, a defendant must have acted intentionally or knowingly in causing the death of the deceased. He must have intentionally or knowingly caused the death, or he must have intended to cause serious bodily injury and have committed an act clearly dangerous to human life that caused the death of deceased. Unless defendant so acted intentionally or knowingly or with intent to cause serious bodily injury to the deceased, he cannot be convicted of murder.

Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Larry Plunkett, did cause the death of April Dawn Peters by striking her with his hands, but you have a reasonable doubt that the defendant did intentionally or knowingly cause death or that he intended to cause April Dawn Peters serious bodily injury, then you will acquit the defendant of murder, and will consider whether or not he is guilty of involuntary manslaughter.

Plunkett made no objection that the charge allowed the jury to convict for a violation of Tex.Penal Code § 19.02(a)(2).

The Texas Court of Criminal Appeals applied its contemporaneous objection rule and confined its review to "fundamental error." 580 S.W.2d at 821. Reversing itself on its own motion for rehearing, it found that the charge did not allow the jury to convict on a non-charged offense. In its view, while the charge was erroneous, there was no fundamental error. In affirming the conviction, the Court of Criminal Appeals conceded Plunkett's contention that allowing a conviction for an offense not charged in the indictment would be fundamental error under Texas law, but found that it did not occur.

■ The state court having reached the merits of Plunkett's challenge to the jury charge, there is no bar under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), to its present review. Even if it could be argued that our standard of review is confined to that exercised by the Texas court, our review of claimed error in jury instructions by state judges is similar to that employed by the Court of Criminal Appeals in its inquiry into fundamental error. "An erroneous instruction will support a collateral attack on the constitutional validity of a state court's judgment only if the ailing instruction so infected the entire trial that the resulting conviction violates due process." *Tyler v. Phelps,* 643 F.2d 1095, 1100 (5th Cir.1981). It follows that the absence of objection has no impact in this case on our review.

II.

The Texas Court of Criminal Appeals in its review of the charge found:

[T]he charge defined murder abstractly, and then applied this definition to the facts in Paragraph 3A. Although a theory not alleged in the indictment is included in Paragraph 3A, it is important to note that this paragraph is a converse charge, directing acquittal and consideration of the lesser included offense, not directing a finding of guilt. Thus, Paragraph 3A did not authorize a conviction under Sec. 19.02(a)(2), and provided no

affirmative guidance for the jury's finding of guilt.

*Id.* at 822.

In *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the Supreme Court interpreted the requirements of 28 U.S.C. § 2254(d). The Court there noted that § 2254(d) drew no distinction between the factual determinations of a state trial court and those of a state appellate court when it referred to "a determination after a hearing on the merits of the factual issue." The Court stated:

> This is true particularly in a case such as this where a federal court makes its determination based on the identical record that was considered by the state appellate court and where there was no reason for the state trial court to consider the issue because respondent failed to raise the issue at that level.

*Id.* at 547, 101 S.Ct. at 769.

■ With the "presumption of correctness" as explicated in *Sumner v. Mata* in mind, we conclude that the Texas court's determination that the charge did not permit the jury to convict for a non-indicted offense is not supported by the record. With due deference to the Court of Criminal Appeals, we reach precisely the opposite result essentially because we consider a part of the record that it declined to consider. Our reading of the charge is guided by the Supreme Court. We pay "careful attention to the words actually spoken ..., for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom v. Montana,* 442 U.S. 510, 514, 99 S.Ct. 2450, 2454, 61 L.Ed.2d 39 (1979). Finally, we are wary lest we fail to heed the interpretive rule that "a single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

In its first opinion, the Texas Court of Criminal Appeals concluded that the jury instructions allowed Plunkett to be convicted for murder without a finding that he intentionally or knowingly caused the child's death but only intended to cause bodily harm. 580 S.W.2d at 817–18. On rehearing en banc, the court reached the opposite conclusion. In reversing itself, the Texas court substantially altered the scope of its analytical focus. The court looked only to the language of the charge and, while considering it to be ambiguous, found, aided by a parsing of the language, that the jury had been properly confined to intentional homicide. In narrowing its focus, the court put from view the closing argument of the prosecutor. It did this by refusing to consider the prosecutor's argument because it was not objected to.

■ We part company with the Texas Court of Criminal Appeals at this point. The application of the Texas contemporaneous objection rule to the prosecutor's closing argument to the jury is unexceptionable. That claimed error is not before us. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594. It does not follow, however, that the argument of the prosecutor can be ignored in the consideration of Plunkett's main point, indisputably reserved for our review. Whether the jury was allowed to convict Plunkett for violating § 19.02(a)(2) when that offense was not charged must be decided in the context of the entire trial. Not only must the charge be read as a whole, but it must be laid in the courtroom scene with all the props and scenery that there existed. Had nothing else occurred but the charge, conceded by the Texas court to have been ambiguous, we would be inclined to agree. The prosecutor told the jury, however:

> The first paragraph of the charge in this case defines murder. And there is primarily two definitions of murder, a person commits murder if he intentionally and knowingly causes the death of an individual. That means I can plot, plan, lay and wait and shoot somebody, knowingly and intentionally shoot them, that's murder, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that caused the death

of an individual. That's the definition that applies to this case, doing an act clearly dangerous to health [sic] that results in death, and it's just most assuredly murder.

\*　　\*　　\*　　\*　　\*　　\*

When Larry Plunkett was inflicting the injuries on this photograph to April Dawn Peters, when he was beating that girl, when he caused the skull fracture to her head, did he do something that caused her death? Did he do something that caused her death? That's murder, paragraph one, cause serious bodily injury and commit an act clearly dangerous to human life is murder just bigger than a goose. If it looks like a duck and walks like a duck and quacks like a duck, well, it's just a duck. Thank you, ladies and gentlemen.

▆ With the court having given a charge which was at least subject to a construction that intent to cause serious bodily injury was sufficient, the explicit explanation by the prosecutor to the jury, without intervention of the court, makes the conclusion inescapable. A reading of the entire record firmly supports the conclusion that the jury was allowed to convict upon the non-charged theory of murder.

We share the view of the dissent that we must be chary of simply reading the same record in a different way than did the state court. We emphasize that our difference with the Texas Court of Criminal Appeals does not flow from a reading of the same record. Instead, the Texas court declined to consider a part of the trial record which we are persuaded must be considered. Indeed, the Texas Court of Criminal Appeals reached the same conclusion as this court when it considered the entire record. It was when it refused to consider the prosecutor's argument that the court concluded that the charge did not permit the jury to convict of an offense not charged. The Supreme Court in *Cupp v. Naughten* counseled that claimed instructional error cannot be viewed in isolation. It emphasized that "... the process of instruction itself is but one of several components of the trial."

*Id.*, 414 U.S. at 147, 94 S.Ct. at 400. We have declined to find fundamental error when there was no evidence to support an offense erroneously added by a jury charge. *See, e.g., United States v. Thetford,* 676 F.2d 170, 180 n. 17 (5th Cir.1982). The claimed error is that the jury was allowed to convict Plunkett of a non-charged offense. We disagree with the Texas Court of Criminal Appeals' refusal to look beyond the ambiguous charge in answering this question.

### III.

Having concluded that Plunkett was tried in a manner that allowed the jury to convict of a distinct crime that the state had not charged, we turn to the consequences of the error. We describe the standard of review, then return to the trial scene for its application.

▆ As we have already noted, a state prisoner seeking federal habeas relief for erroneous jury instructions faces a heavy burden:

> '[I]t must be established not merely that the instruction [was] undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment,' and that 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'

*Washington v. Watkins,* 655 F.2d 1346, 1369 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

▆ The constitutional right implicated here is basic:

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, ... are among the constitutional rights of every accused ...

*Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948). Denial of this right has driven federal habeas relief in numerous cases. *See, e.g., Tarpley v. Estelle,* 703 F.2d 157 (5th Cir.1983); *Gray v.*

*Raines*, 662 F.2d 569 (9th Cir.1981); *Watson v. Jago*, 558 F.2d 330 (6th Cir.1977).

■ The state suggests that we should conclude that this jury could not have convicted Plunkett of the non-charged offense of murder under § 19.02(a)(2), given his defense. This is a proper inquiry. The legal issues posed by convictions for non-charged offenses may be addressed in terms of a variance between indictment and proof. In this context, we have refused proffered error on direct review of a federal prosecution for the reason that "in the absence of evidence upon which the jury might have convicted on a ground not contained in the indictment, the defendant's conviction shall not be reviewed. In the absence of such evidence, the court's inadvertent addition of the instruction contained in the charge is 'trivial ...'" *United States v. Thetford*, 676 F.2d 170, 180 n. 17 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983). Our approach here is a specific application of the *Sandstrom* teaching that the question is whether a reasonable juror *could* have so concluded. 442 U.S. at 517, 99 S.Ct. at 2455. Where there is no evidence of the non-charged offense, or variance, one is a long way in his answer to the *Sandstrom* inquiry.

■ Plunkett denied that he had used any force on the child with any intent to injure. While he admitted that in his efforts to resuscitate he might have used greater force than he should have, his explanation for other severe injuries to the child, such as the blow to her head, was a fall from a bed. Yet although Plunkett's defense involved no concession of any blow with intent to injure but not to kill, a reasonable juror could still have found the former but not the latter state of mind. Specifically, the jurors may not have been persuaded that Plunkett ever intended to actually kill the child but may have decided that he did intend to inflict a serious bodily injury by an act clearly dangerous to her life. In sum, we face a case where the charge read with the jury argument and the evidence at trial are such that a reasonable juror could have convicted Plunkett of a distinct crime with which he was not charged.

So far we have described no more than a risk of conviction not contained in an indictment. Plunkett had no constitutional right to a state indictment. His constitutional right is the Sixth Amendment right "to be informed of the nature and cause of the accusation ..." *Spinkellink v. Wainwright*, 578 F.2d 582, 609 n. 32 (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

The state does not argue and nothing in the record supports a reasonable conclusion that Plunkett was ever aware he might be convicted not of intentionally killing the child, but of intending to injure her by a blow that caused her death. The indictment read with an understanding of Texas law gave precisely the opposite notice. Under Texas law, § 19.02(a)(1) and § 19.-02(a)(2) are distinct and separate crimes. Under § (a)(1), the state had to prove that Plunkett intended to kill; § (a)(2) "plainly dispense[s] with the requirement that the actor *intend* the resulting death.... This is a significant and obvious distinction between § 19.02(a)(2) and § 19.02(a)(1), the 'intentional' murder statute." *Lugo-Lugo v. State*, 650 S.W.2d 72 at 88 (Tex.Cr.App. 1983) (opinion on rehearing en banc) (Clinton, J., concurring).

Finally, we note that the differences between the two types of murder were peculiarly in tension under these facts. It takes little imagination to see the decisional calculus of a reasonable juror confronted with Plunkett's defense that he may have injured the child but did not intend to do so and with a charge permitting conviction if Plunkett intended serious injury even if he did not intend death. The state indicted Plunkett for intending the death. It was not entitled to a fall-back offense if it failed to convince that death was subjectively intended. It is not a sporting theory of justice we describe. More is at stake than an ill-played card. The difference between these offenses obviously would effect the defensive preparation. It is basic notice

which was denied. We cannot find that denial to have been harmless. The denial was unconstitutional and prejudiced the defendant. The writ must issue. The denial of the petition for habeas corpus is reversed. The case is remanded with instruction that the district court set a reasonable time within which Texas may try Plunkett again.

REVERSED AND REMANDED.

JOHN R. BROWN, Circuit Judge, dissenting:

I respectfully dissent. The majority recites but then ignores the recent teachings of the United States Supreme Court. It repudiates the carefully considered findings of the Texas Court of Criminal Appeals and impermissibly substitutes its own judgment for that of the state court. This unacceptable approach leads the majority to the wrong result.

Clearly, a jury could find beyond a reasonable doubt that the indictment fairly described Plunkett's brutal crime. It is undisputed that the indictment was constitutionally adequate. The sole issue is whether the court's charge to the jury was fundamental error. The Texas Court of Criminal Appeals found that it was not. This determination deserves far more than the insubstantial deference shown it by the panel majority.

In *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) the Supreme Court ruled that a state court's factual determinations must be accorded a "presumption of correctness" under 42 U.S.C. § 2254(d). As the Court recently stated in *Marshall v. Lonberger,* —— U.S. ——, ——, 103 S.Ct. 843, 850, 74 L.Ed.2d 646, 657 (1983), *Sumner* calls for a " 'high measure of deference' " and "requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair[ ] support' in the record."

The Supreme Court's decision in *Maggio v. Fulford,* —— U.S. ——, 103 S.Ct. 2261,

76 L.Ed.2d 794 (1983), is a fresh reminder that the Courts of Appeals are not free to second-guess determinations made by state courts. In that case, this Court had reversed the district court and granted habeas relief to a petitioner who claimed he was mentally incompetent to have stood trial. *Fulford v. Maggio,* 692 F.2d 354 (5th Cir. 1982). The issue had earlier been raised before the trial court, which had found the defendant competent. The Louisiana Supreme Court upheld that finding on appeal. Summarily reversing this Court's decision, the Supreme Court had "not the slightest hesitation in saying that the trial court's conclusion as to Fulford's competency was 'fairly supported by the record.' " —— U.S. at ——, 103 S.Ct. at 2264, 76 L.Ed.2d at 799.

In its decision on rehearing in this case, the Court of Criminal Appeals pointed out that the portion of the instructions which referred to the non-indicted crime were phrased in such a way as to direct acquittal, and consideration of the lesser offense of manslaughter, if the jury did not find certain facts beyond a reasonable doubt. Because the jury was instructed to return a verdict of guilty only if they found that Plunkett did "intentionally or knowingly cause the death" of the victim, the instruction did not authorize the jury to return a guilty verdict on the nonindicted offense.

[T]he charge defined murder abstractly, and then applied this definition to the facts in Paragraph 3A. Although a theory not alleged in the indictment is included in Paragraph 3A, it is important to note that this paragraph is a converse charge, directing acquittal and consideration of the lesser included offense, not directing a finding of guilt. Thus, Paragraph 3A did not authorize a conviction under Sec. 19.02(a)(2), and provided no affirmative guidance for the jury's finding of guilt.

*Plunkett v. State,* 580 S.W.2d 815, 822 (Tex. Cr.App.1979).

The conclusion reached by the Court of Criminal Appeals is fairly supported by the actual language of the jury charge and by

**1012**

the record as a whole. Yet the majority chooses to give the record its own interpretation. By failing to accord a properly high measure of deference to the findings of the Court of Criminal Appeals, the majority overlooks the clear lesson of *Sumner, Lonberger,* and *Fulford.*

Even more so, I disagree with the majority's contention that the prosecutor's closing argument elevated the otherwise acceptable jury instruction to the realm of fundamental error. Because of the absence of a contemporaneous objection, the propriety of the prosecutor's argument is not before this Court. The sole question—as the majority acknowledges—is whether the instruction itself, in the context of the circumstances of the trial, authorized a conviction on the unindicted offense. The majority acknowledges that at least arguably, the instruction alone did not authorize any such verdict. I cannot accept the majority's thesis that the court's constitutionally acceptable instruction was somehow turned into fundamental error by the prosecutor's remarks.

I find nothing in the Court of Criminal Appeals' *en banc* opinion to suggest that it would have reached a different result if only it had placed the jury charge in the context of the prosecutor's argument. That Court considered the language of the charge and concluded that it did not authorize conviction for a non-indicted offense. I would uphold that finding.

But more fundamentally, the constitutional acceptability of an errorless jury charge cannot by the words of an advocate be transmuted into a denial of due process by the Texas courts.