DAUPHINOT, J.,
dissenting.
The majority holds proper a jury charge that instructs the jury to return a general verdict of guilty of murder if they find (1) that the defendant either intentionally or knowingly caused death or (2) that he intended to cause substantial risk of life or serious bodily injury, in any of its forms, and committed an act clearly dangerous to human life which caused death because “these are alternate means of committing murder.”[1] The majority confuses “alternate means of committing murder” with alternative manner and means of committing the same offense. Respectfully, I must dissent.
The Court of Criminal Appeals has repeatedly explained,
We have long held that intentional murder is a “result of conduct” offense. As a “result of conduct” offense “[w]hat matters is that the conduct (whatever it may be) is done with the required culpability to effect the result the Legislature has specified.” Any other language relating to conduct is inconsequential.[2]
In addition to by intentionally or knowingly killing a person, murder may also be committed when the defendant causes death but intends to commit an act clearly dangerous to human life that results in death or by committing a felony other than manslaughter that results in death.[3] These additional forms of murder are, like intentional or knowing murder, “result of conduct” offenses, but they require additional proof:
[MJurder under Section 19.02(a)(2) [now 19.02(b)(2) ] is a “result” type of a crime. It is committed when (1) the individual intends to cause serious bodily injury, (2) commits an act clearly dangerous to human life that (3) causes the death of an individual. If we apply the definitions of “intent” under Section 6.02(a) and serious bodily injury under V.T.C.A. Penal Code, Section 1.07(a)(34) we conclude that a prosecution ... must first show that the individual, acting with the conscious objective or desire to create a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ, caused the death of an individual. Thus, the first element of prosecution ... is satisfied.
The second element of prosecution ... requires a showing that the individual commits an act clearly dangerous to human life, i.e., it requires that the act intended to cause serious bodily injury be objectively clearly dangerous to human life. Because the definition of serious bodily injury includes serious permanent disfigurement and protracted loss or impairment of a bodily member *437 or organ, it does not necessarily follow that an act that intended to cause serious bodily injury was also intended to be clearly dangerous to human life. Since an act that was intended to cause serious bodily injury may not have been intended to be clearly dangerous to human life, the statute requires that the character of the act be measured by an objective standard. Thus, while an individual may be convicted of murder under Section 19.02(a)(1) [now 19.02(b)(1) ] by intending to cause death notwithstanding that the act resulting in death was not objectively clearly dangerous to human life, the individual could not be convicted of murder under Section 19.02(a)(2) by intending to cause serious bodily injury unless the act resulting in death was objectively clearly dangerous to human life. Ergo, by authorizing a conviction for murder by intending to cause death by an act, regardless of its magnitude, or by intending to cause serious bodily injury, by an act clearly dangerous to human life, the legislature has determined that 19.02(a)(1) and (a)(2) are functionally equivalent. Thus, the requirement of a culpable mental state under Section 19.01(a), supra, is satisfied when it is established that the individual, with the intent to cause serious bodily injury, commits an act clearly dangerous to human life that results in death. The effect of the panel opinion in requiring that a culpable mental state of “intentionally or knowingly” be applied to the conduct that is clearly dangerous to human life, was to change the character of murder under Section 19.02(a)(2), supra, from a “result” type of a crime to a “result” and “conduct” type of a crime. Section 19.02(a)(2), supra, clearly by its terms, focuses the mental state of the individual on the particular result and not on the conduct that causes death.[4]
That is, although the State would not be able to secure two convictions for murdering the same individual, the two forms of murder are mutually exclusive because they have contradicting or additional elements.
While the discussion in Lugo-Lugo deals with the sufficiency of the indictment’s allegation of culpable mental state, it also points out that murder under what is now section 19.02(b)(2) has elements that intentional or knowing murder does not have. To convict a person of murder under section 19.02(b)(2), the State must prove “that the individual, acting with the conscious objective or desire to create a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ, caused the death of an[other] individual.”[5] But, in addition, the State must also prove that the act was clearly dangerous to human life.[6] It is clear that section 19.02(b)(1) and section 19.02(b)(2) each contains at least one element that the other does not.[7]
The Fifth Circuit has stated:
Under Texas law, § 19.02(a)(1) and § 19.02(a)(2) [now sections 19.02(b)(1) and (b)(2) ] are distinct and separate crimes. Under § (a)(1), the state had to prove that Plunkett intended to kill; § (a)(2) “plainly dispensed] with the requirement that the actor intend the resulting death.... This is a significant and obvious distinction between § 19.02(a)(2) and § 19.02(a)(1), the ‘intentional’ murder statute.”[8]
*438 In discussing whether a conviction would lie for both intoxication manslaughter and felony murder in Bigon v. State, the Texas Court of Criminal Appeals addressed the application of Blockburger in a double-jeopardy context.[9] The Bigon court noted,
It is obvious from the outset that, when comparing the two Texas Penal Code statutes, the offenses are not the same.... [Djouble-jeopardy challenges should be made even to offenses that have differing elements under Block burger, if the same “facts required” are alleged in the indictment.[10]
Intoxication manslaughter and felony murder are not the same offense under Block-burger, even though double jeopardy protections prevent conviction of both when there is a single death.[11]
The focus of the two offenses is the same: the death of an individual. Both offenses are result oriented and punish one for causing the death of another, even if engaging in the behavior that ultimately ended in death but was not intended to cause the death. As we said in [Ex parte] Ervin, [991 S.W.2d 804 (Tex.Crim.App.1999)] the sameness of the result is an indication that the legislature did not intend to impose multiple punishments. In conjunction with this factor is the “allowable unit of prosecution,” which is defined by the legislature and determines if one course of conduct results in more than one offense.... In Texas, the allowable unit of prosecution for an assaultive offense is one unit per victim, which is evidence that the legislature did not intend for one to be prosecuted for several homicides when there is only one victim.[12]
Just as in Bigon, in the case now before this court, the allowable unit of prosecution is the number of deaths. For double jeopardy purposes, intoxication manslaughter and felony murder, although they are different offenses, will support only a single conviction.[13] Similarly, for double jeopardy purposes, intentional murder under Texas Penal Code section 19.02(b)(1) and murder under 19.02(b)(2),[14] although they are different offenses, will support only a single conviction. The majority correctly treats intentional murder and section 19.02(b)(2) murder as the same offense because, for double jeopardy purposes, they are the same: double jeopardy protection prevents the State from securing two convictions for the act that resulted in a single death. But the majority incorrectly concludes that because these are the same offense for double jeopardy purposes, intentional murder and section 19.02(b)(2) murder are the same offense for purposes of juror unanimity.
Just as a jury must unanimously decide whether a defendant is guilty of felony murder or intoxication manslaughter, a jury must unanimously determine whether a defendant is guilty of section 19.02(b)(2) murder or intentional murder. Under Blockburger, they are separate offenses, each requiring proof of at least one ele *439 ment not required by proof of the other.[15] Just as felony murder and intoxication manslaughter are different offenses, intentional murder and section 19.02(b) murder are different offenses.
As the Plunkett court explained, intentional murder and section 19.02(b)(2) murder are not interchangeable.[16] They are separate offenses.[17] The elements of one offense are not shared by the other; they are not mere surplusage but essential elements that must be proved.[18] And, as the Bigon court explained in discussing why felony murder and intoxication murder may be the same offense for double jeopardy purposes but are not the same offense for purposes of proof, a jury could not be charged to convict a defendant in a general verdict.[19]
The issue before this court, and the issue faced by our sister courts and by the Texas Court of Criminal Appeals, unanimity of the jury verdict, is one of fundamental due process.[20] “Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases.”[21] But we must not ignore the fact that
[federal constitutional due process considerations ... limit the state’s ability to define a crime so as to dispense with the requirement of jury unanimity on the alternate means or modes of committing it. So the second step in the analysis is an evaluation of whether the lack of jury unanimity on the alternate means or modes of commission violates due process.[22]
The majority does not address Plunkett in any depth, and dismisses the distinction between intentional murder and murder under section 19.02(b)(2) as merely different mental states, relying in part on Jefferson v. State.[23] The majority also cites Jefferson for the proposition that unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the State has proven the intent element beyond a reasonable doubt.[24] But this is not what Jefferson is all about. Jefferson deals only with manner and means, not with mutually exclusive elements in separate offenses.[25]
The issue in Jefferson was whether the jury must return a unanimous verdict regarding whether the defendant committed an act or omitted to do an act when the jury was required to find unanimously that the defendant intentionally caused injury *440 to a child.[26] That is, the question was how do we determine what is an element that must be proved and that the jury must unanimously conclude was proved and what is merely descriptive, not requiring unanimity? In her concurring opinion, Judge Cochran offers a suggestion for making this determination:
[W]e must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); and the specific occasion (the date phrase within the indictment, but narrowed down to one specific incident regardless of the date alleged). Generally, adverbial phrases, introduced by the preposition “by,” describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.[27]
Applying Judge Cochran’s grammar test, the two offenses we must address are distinct. Section 19.02(b)(1) requires that a person intentionally or knowingly cause the death of another (person I causes I death). Section 19.02(b)(2) permits conviction only if a person, with the intent or desire to create a substantial risk of death, or to cause serious permanent disfigurement, or to cause protracted loss or impairment of any bodily member or organ, does an act that is, objectively, clearly dangerous to human life and that results in the death of another (person I does I clearly dangerous act). Section 19.02(b)(1) does not require an act that is, objectively, clearly dangerous to human life, but it does require the specific intent to kill.[28] Section 19.02(b)(2) does not require a specific intent to kill, but it does require an act that is clearly dangerous to human life.[29]
For example, a person may, with the intent or desire to cause protracted impairment of the use of a hand to prevent a competitor’s winning a piano competition, break the fingers of the hand, inadvertently creating a blood clot that kills the person. That person has not violated 19.02(b)(2) because breaking fingers is not an act that is, objectively, clearly dangerous to human life, although the actor acted with intent to cause protracted impairment of the use of the other’s hand.
The elements of intentional murder and section 19.02(b)(2) murder are not merely descriptive; they are essential elements. Because the majority dismisses the conflicting elements of sections 19.02(b)(1) and 19.02(b)(2) as mere differing manner and means of committing the same offense, I must respectfully dissent.

. See majority op. at 432 & n. 4.

. Cook v. State, 884 S.W.2d 485, 490 (Tex.Crim.App.1994) (citations omitted).

.Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).

. Lugo-Lugo v. State, 650 S.W.2d 72, 81-82 (Tex.Crim.App.1983) (op. on reh’g).

. Id. at 81.

. Id.

. See Tex. Penal Code Ann. § 19.02(b)(1), (2).

. Plunkett v. Estelle, 709 F.2d 1004, 1010 (5th Cir.1983), cert. denied, McKaskle v. Plunkett, 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

. Bigon v. State, 252 S.W.3d 360, 370 (Tex.Crim.App.2008).

. Id. (citations omitted).

. Id.

. Id. at 371-72 (citations omitted).

. Id.

. Tex. Penal Code Ann. § 19.02(b)(1), (2).

. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

. Plunkett, 709 F.2d at 1010.

. Id.

. See Brown v. State, 955 S.W.2d 276, 284 (Tex.Crim.App.1997); see also Fazzino v. State, 531 S.W.2d 818, 820 (Tex.Crim.App.1976) (holding that intent to kill is not an element of murder charged under theory that accused intended to cause serious bodily injury and committed an act dangerous to human life that caused death of individual).

. Bigon, 252 S.W.3d at 372.

. See Ngo v. State, 175 S.W.3d 738, 753 (Tex.Crim.App.2005) (Hervey, J., dissenting) (discussing Schad v. Arizona, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991)).

. Jefferson v. State, 189 S.W.3d 305, 311 (Tex.Crim.App.) (citing Ngo, 175 S.W.3d at 745 (Cochran, J., writing for majority)), cert. denied, 549 U.S. 957, 127 S.Ct. 386, 166 L.Ed.2d 276 (2006).

. Id. at 312 (citations and quotations omitted).

. Id. at 311; majority op. at 432.

. Majority op. at 432-33.

. Jefferson, 189 S.W.3d at 315 (Cochran, J., concurring).

. Id. at 306 (Hervey, J., writing for majority).

. Id. at 315-16 (Cochran, J., concurring).

. Lugo-Lugo, 650 S.W.2d at 81-82.

. Plunkett, 709 F.2d at 1010.