

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-189-CR

PHILLIP BUNDY                                                          APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

**Introduction**

Appellant Phillip Bundy appeals his conviction for murder. In four issues, he asserts that the trial court erred by excluding character evidence of the deceased's violent nature, refusing to include a requested jury instruction regarding apparent danger, and failing to require a unanimous verdict through the language of the jury charge, and that the evidence is factually insufficient to support the jury's rejection of his self-defense claim. We affirm.

**Background Facts**

At around three o'clock in the afternoon of February 27, 2005, at an apartment complex within a high-crime area of Fort Worth, Rodney Price was drinking beers and smoking cigarettes with several other individuals.[1] About that time, appellant, who was also at the complex, became angry and began carrying a knife while cursing. A dispute ensued between appellant and Price. Price, who was larger than appellant, took off his jacket, and then swung his fist at appellant and missed as appellant ducked. Appellant then quickly stuck the knife into Price's side. Price began running as appellant chased him and attempted to stab him again. Price fell in the parking lot and raised his hands in an effort to protect himself, then ran toward a street, with appellant continuing to chase him. Upon reaching the street, Price collapsed as appellant ran away.

After a short time, medical personnel arrived to care for Price, and police arrived to document and photograph the crime scene and take statements from witnesses who had seen the fight. At 3:42 p.m., Price was pronounced dead. Price died from a stab wound to his left chest; he also had defensive cut wounds on his hands. The witnesses later identified appellant as the man who

---

[1] Testimony at trial also indicated that Price had been smoking crack cocaine earlier that day.

2

had stabbed Price.  During the altercation, Price never displayed any weapons, and officers did not find any weapons at the scene.

A grand jury indicted appellant for murder.  At trial, appellant argued that he acted in self-defense, and the State conceded that Price was the first aggressor.  A witness called by appellant testified that on the afternoon these events occurred, she spoke with an eye witness who yelled repeatedly, "[I]t was self-defense!"  Appellant's counsel attempted to offer evidence that Price had two convictions for violent offenses for the purpose of showing that Price "was a violent man and he acted in a violent way," but the trial court sustained the State's objection to this evidence.  Appellant's counsel also requested that language regarding a theory of apparent danger be placed in the jury charge, but the court rejected this request.  After the evidence was closed and counsel presented their arguments, the jury convicted appellant of murder and assessed punishment at fifteen years' confinement.

**Exclusion of Character Evidence**

In his first issue, appellant asserts that the trial court erred in excluding character evidence of Price's violent nature under Texas Rule of Evidence 404(a)(2).  We review a trial court's decision to exclude evidence under an abuse of discretion standard, and we must therefore affirm the trial court's decision unless it is beyond the "zone of reasonable disagreement." *Green v.*

*State,* 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997).

To preserve error in a trial court's exclusion of evidence, the substance of the excluded evidence must be shown by an offer of proof unless it is apparent from the context of the questions asked.  Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.2; *Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1100 (1994); *Fairow v. State*, 943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997).  The purpose of the offer of proof is to show what the witness's testimony would have been—otherwise, there is nothing before the appellate court to show reversible error in the trial court's ruling. *Stewart v. State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 866 (1985); *see Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).  Error may be preserved by an offer of proof in question and answer form or in the form of a concise statement by counsel.  Tex. R. Evid. 103(b); *Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993). Counsel's concise statement must include a summary of the proposed testimony.  *Love*, 861 S.W.2d at 901.  Error is not preserved if the offer of proof is inadequate.  *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998).

4

At trial, a lengthy exchange took place between counsel and the court regarding whether Price's prior violent acts would be admissible. Appellant's counsel stated that he intended to ask a witness to the stabbing about two prior convictions regarding violence allegedly committed by Price through a "have-you-heard" question, for the purpose of showing what Price's "actual intent was." However, appellant never submitted this question to the witness through a formal offer of proof, nor did he indicate what he believed the witness's answer would have been. Because nothing in the record indicates what knowledge the witness had as to Price's previous acts, the substance of the excluded testimony cannot be determined. Therefore, appellant failed to preserve error. *See Stewart*, 686 S.W.2d at 122. Moreover, we have held that under Texas Rule of Evidence 404(b)

> [t]wo conditions precedent must exist . . . before an extraneous act of the victim will be admissible to support a claim of self-defense: 1) some *ambiguous or uncertain evidence* of a violent or aggressive act by the victim must exist that tends to show the victim was the first aggressor; and 2) the proffered evidence must tend to *dispel the ambiguity* or explain the victim's conduct.

*Reyna v. State*, 99 S.W.3d 344, 347 (Tex. App.—Fort Worth 2003, pet ref'd) (emphasis added); *see also Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (explaining that such evidence of prior acts is admissible to show that "the deceased was the first aggressor"). Here, the witnesses to the events

5

agreed at trial that Price swung his fist at appellant before appellant stabbed Price, and the State conceded this fact. Therefore, there was no ambiguity that the introduction of the victim's previous violent acts would have dispelled.[2]

For these reasons, we overrule appellant's first issue.

## Apparent Danger Instruction

In his second issue, appellant argues that the trial court erred in excluding a requested jury instruction regarding apparent danger. Specifically, appellant requested an instruction at trial that would have stated:

> In determining the existence of real or apparent danger, . . . you should consider all the facts and circumstances in the case and evidence before you together with all the relevant facts and circumstances going to show the condition of the mind of the Defendant at the time of the occurrence in question. And in considering such circumstances, you should place yourselves in Defendant's position at that time and view them from his standpoint alone.

After hearing argument from counsel, the court excluded this instruction.

---

[2] Evidence of a deceased's character for violence may also be admissible to demonstrate that the defendant believed the force used "was immediately necessary to protect herself from the deceased." *Mozon v. State*, 991 S.W.2d 841, 845 (Tex. Crim. App. 1999). However, appellant cannot sustain his argument that the evidence was wrongly excluded on this ground because the proposed "have-you-heard" question was intended to be directed at a third-party witness to the events, rather than appellant himself, and therefore had no relation to appellant's subjective belief.

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). Initially, we must determine whether error occurred; if so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be some harm to the accused from the error. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); *see also Abdnor*, 871 S.W.2d at 732; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In other words, a properly preserved error will require reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

Texas courts have held that when a defendant claims self-defense, his rights are fully preserved (and the concept of "apparent danger" is properly presented) when a jury charge (1) states that a defendant's conduct is justified if he reasonably believed that the deceased was using or attempting to use

7

unlawful deadly force against the defendant, and (2) correctly defines "reasonable belief." *Valentine v. State*, 587 S.W.2d 399, 401 (Tex. Crim. App. [Panel Op.] 1979); *Venegas v. State*, 660 S.W.2d 547, 551 (Tex. App.—San Antonio 1983, no pet.) (concluding that by defining "reasonable belief," the trial court "adequately presented appellant's defensive theory" of apparent danger). In other words, by defining "reasonable belief" in accordance with the penal code, a trial court adequately relates to the jury that "a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise the right of self-defense against his adversary." *Valentine*, 587 S.W.2d at 401; *see also Price v. State*, No. 02-02-00268-CR, 2003 WL 1351991, at *1 (Tex. App.—Fort Worth Mar. 20, 2003, no pet.) (mem. op., not designated for publication) (explaining that by defining "reasonable belief," the trial court "adequately presented the appellant's defensive theory and protected his rights").[3]

Here, the court's charge instructed the jury that "a person is justified in using deadly force against . . . another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force." The charge further

---

[3] We note that at oral argument, counsel for appellant conceded that current precedent weighs against his argument on this issue.

8

explained that a person is justified in using deadly force "when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force." Then the charge defined "reasonable belief" as "a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant."

We hold that these instructions tracked the standards and definitions relating to self defense, deadly force, and reasonable belief provided in the penal code and therefore fully preserved appellant's rights. *See* Tex. Penal Code Ann. §§ 1.07(a)(42), 9.31, 9.32 (Vernon Supp. 2008). Therefore, we overrule appellant's second issue.

### Verdict Unanimity

In his third issue, appellant contends that the trial court gave a defective charge because it failed to require the jury to agree on a unanimous verdict. Appellant admits that he did not object to the charge on this ground.

If there is error in the court's charge but the appellant did not object to it at trial, we must decide whether it created such harm that appellant did not have a fair and impartial trial—in short, that "egregious harm" has occurred. *Almanza*, 686 S.W.2d at 171; *see* Tex. Code Crim. Proc. Ann. art. 36.19; *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). The purpose

9

of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Hutch*, 922 S.W.2d at 171.

Jury unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). In other words, every juror must agree that "the defendant committed the same, single, specific criminal act." *Id.* Appellant reasons that because the charge in this case defined murder through separate theories with separate mental states,[4] but contained only one application paragraph, the jury was not required to unanimously agree that the State proved the elements of the offense. However, we recently rejected this exact argument in *Davis v. State*, 268 S.W.3d 683, 710–12 (Tex. App.—Fort Worth 2008, pet. filed).

In *Davis*, the jury was charged with the same variant means of committing murder as the jury in this case. *Id.* at 712. As in this case, the

---

[4] The charge instructed the jury to find appellant guilty if he either intentionally or knowingly caused Price's death, or if with the intent to cause serious bodily injury, he intentionally committed an act clearly dangerous to human life which caused Price's death. These are alternate means for committing murder under section 19.02(b) of the penal code. Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).

appellant in *Davis* argued that charging murder in this method resulted in a nonunanimous verdict. *Id*. at 710. In rejecting that assertion, we held that

> [w]here the legislature has specified that any of several different mental states will satisfy the intent or *mens rea* element of a particular crime, unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the State has proved the intent element beyond a reasonable doubt. That is, the jury did not need to unanimously agree on the preliminary factual issue of Davis's mental state when he stabbed Latarsha, as long as it agreed on the bottom line—he murdered her.

> The jury here was authorized in the charge of the court to find Davis guilty of murder if he "intentionally or knowingly cause[d] the death of an individual or intentionally, with intent to cause serious bodily injury, commit[ted] an act clearly dangerous to human life and cause[d] the death of an individual"; the jury returned a general verdict finding Davis "guilty of the offense of murder as charged in the indictment." The jury unanimity requirement is not violated where, as here, the defendant was indicted under a statute providing alternate means of committing the same offense.

*Id.* at 712 (citations omitted); *see also Schad v. Arizona*, 501 U.S. 624, 632, 111 S. Ct. 2491, 2497 (1991) (explaining that there "is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict"); *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App.), *cert. denied*, 549 U.S. 957 (2006) (stating that when the legislature has "specified that any of several different mental states will satisfy the intent or mens rea element of a particular crime, unanimity is not required on the specific alternate

11

mental state as long as the jury unanimously agrees that the [S]tate has proven the intent element beyond a reasonable doubt").

The dissent quotes extensive passages from cases addressing the Texas murder statute where the issues decided did not involve unanimity, but rather concerned other issues related to jury charges or indictments. *See Cook v. State*, 884 S.W.2d 485, 490–92 (Tex. Crim. App. 1994) (reversing a murder conviction because the jury charge applied the intent requirement to engaging in conduct rather than the result of the conduct); *Lugo-Lugo v. State*, 650 S.W.2d 72, 81–82 (Tex. Crim. App. 1983) (op. on reh'g) (analyzing a challenge to the language of an indictment); *Plunkett v. Estelle*, 709 F.2d 1004, 1009–10 (5th Cir. 1983), *cert. denied*, *McKaskle v. Plunkett*, 465 U.S. 1007 (1984) (concluding that a conviction was improper where the jury charge contained a non-indicted theory of murder).[5] These cases all aptly describe that there are variant methods of committing murder in this state. However, the decisions do not address the "crucial" concerns of the unanimity requirement—that a jury cannot convict a defendant without agreeing on the specific actus reus which

---

[5] We note that while federal Fifth Circuit decisions may be persuasive, we are not obligated to follow them in the same way as we are obligated to follow the precedent of our State's highest courts and the United States Supreme Court. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993).

12

occurred, nor convict the defendant of wrongdoing by agreeing that a single incident occurred that could be classified as multiple offenses. *See Ngo*, 175 S.W.3d at 744–47 (concluding that the unanimity requirement was violated because the jury was not required to agree whether the defendant had stolen a credit card, received it while knowing it was stolen, or presented it with the intent to obtain a fraudulent benefit); *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1987) (op. on reh'g) (affirming a murder conviction where the indictment charged both intentional and felony murder, but the jury charge only contained a general verdict, because the "indictment did not allege different offenses but only alleged different ways of committing the same offense").

The dissent cites the holding of the Court of Criminal Appeals in *Jefferson*, but then dismisses its importance by applying its concurring opinion. Dissenting op. at 8–11. In *Jefferson*, the majority of the Court held that because the "essential element or focus of [the serious bodily injury to a child offense] *is the result of the defendant's conduct* . . . and not the possible combinations of conduct that cause the result," the jury was not required to be unanimous about such "combinations of conduct." *Jefferson*, 189 S.W.3d at 312 (emphasis added). As the dissent notes, murder is likewise a result-focused offense. Dissenting op. at 2. *See Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003) (explaining that murder is a "result of

13

conduct" offense).  Like the offense at issue in *Jefferson*, therefore, the jury is not required to unanimously agree about the "combinations of conduct" required to sustain a murder conviction, because these combinations of conduct do not create separate offenses.  *Aguirre*, 732 S.W.2d at 326; *see also Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008) (stating that "[i]f the focus of the offense is the result—that is, the offense is a 'result of conduct' crime—then different types of *results* are considered to be separate offenses, but different types of *conduct* are not") (emphasis added).

Because the jury in this case was only asked to examine one actus reus (the stabbing) and one result (Price's death), and because precedent clearly holds that, for the purposes of jury unanimity, the variant means of murder comprise only one offense, there is no violation of the unanimity requirement in this case.[6]  As in *Davis*, the charge in this case merely provided the jury with alternate means of committing the same offense—murder.  Accordingly, we hold that the charge did not fail to require the jury to agree on a unanimous verdict, and we overrule appellant's third issue.

---

[6] We note that our sister courts have come to the same conclusion on this issue.  *See, e.g., Williams v. State*, No. 03-05-00460-CR, 2008 WL 744710, at *5 (Tex. App.—Austin Mar. 21, 2008, no pet.) (mem. op., not designated for publication); *Yost v. State*, 222 S.W.3d 865, 877–78 (Tex. App.— Houston [14th Dist.] 2007, pet. ref'd).

**Factual Sufficiency Challenge**

In his final issue, appellant contends that the evidence presented at trial was factually insufficient to reject his claim of self-defense. Because self-defense is classified as a defense rather than an affirmative defense, we apply the factual sufficiency review generally applied to convictions to appellant's challenge of the jury's implicit finding beyond a reasonable doubt against his self-defense claim. *See Denman v. State*, 193 S.W.3d 129, 133 n.2 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Manuel v. State*, 981 S.W.2d 65, 68 (Tex. App.—Fort Worth 1998), *aff'd* 994 S.W.2d 658 (Tex. Crim. App. 1999) (explaining that the State has the burden to disprove self-defense beyond a reasonable doubt).

**Standard of Review**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is

manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id.* We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id.* at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

**Analysis**

The State conceded and the evidence established that Price was the first aggressor. Specifically, Price swung his fist at appellant and appellant ducked before appellant stabbed Price with a knife. However, testimony at trial differed as to whether Price threatened appellant before attempting to punch him. One witness to the events testified that Price said he was going to "beat [appellant's] ass" when he was about two feet away, another witness testified that Price did not say anything before swinging, and a third witness indicated that appellant was the verbal aggressor while Price "did nothing" and "just stood there." The evidence further established that Price had been smoking crack cocaine and drinking beer earlier that afternoon, that Price was bigger than appellant, that Price may have "picked on" appellant in the week preceding the incident, and that one of the eye witnesses to the stabbing may have

17

exclaimed later that day that "it was self-defense" (the evidence conflicted regarding this statement, as explained below). However, the evidence also indicated that Price displayed no weapons, that appellant was already angry and carrying a knife before approaching Price, and that appellant attempted to stab Price again as Price was trying to run away.

Appellant argues that he was justified in using deadly force because (1) Price was the first aggressor and had threatened that he was going to "beat [appellant's] ass", (2) Price had been smoking crack cocaine that day, and (3) an eye-witness to the stabbing allegedly opined that "it was self-defense!"

Viewing the facts in a neutral light, we cannot agree with appellant that the evidence was factually insufficient to justify the jury's rejection of his self-defense claim. Deadly force in self-defense is justified only when a person reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. Tex. Penal Code Ann. § 9.32; *Schiffert v. State*, 257 S.W.3d 6, 14 (Tex. App.—Fort Worth 2008, pet. dism'd).

The facts recited above cannot support appellant's assertion that he had a reasonable belief that Price was attempting to use deadly force or to commit

18

one of these offenses. First, appellant's deadly force was not a justifiable response to Price's attempt to punch appellant, which was not deadly force. "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." Tex. Penal Code Ann. § 9.01(3) (Vernon Supp. 2008). "Serious bodily injury" is an injury that creates a "substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46) (Vernon Supp. 2008). A sole attempted punch does not satisfy these definitions. *See Schiffert*, 257 S.W.3d at 14 (concluding that a punch could not demonstrate an "attempt to use deadly force"); *see also Castilleja v. State*, No. 07-06-00062-CR, 2007 WL 2163111, at *4 (Tex. App.—Amarillo July 24, 2007, pet. struck) (mem. op., not designated for publication) (holding that the use of deadly force was not a proper response to a fist fight).

Second, even if Price verbally threatened that he was going to "beat [appellant's] ass" (of which, as noted, the evidence conflicted), such a threat also does not justify appellant's use of deadly force, because it does not indicate any intention to cause death or serious bodily injury as defined by these statutes. *See Kirkpatrick v. State*, 633 S.W.2d 357, 358 (Tex. App.—Fort Worth 1982, pet. ref'd, untimely filed) (deciding that the appellant was not

entitled to use deadly force when the victim "hollered" at him and threatened to "kick his ass"). Third, though there is evidence in the record that Price smoked crack cocaine on the day of the stabbing, there is no evidence in the record that appellant knew he had done so. Therefore, this fact cannot contribute to any "reasonable belief" held by appellant that deadly force was immediately necessary.

Next, appellant contends that the jury should have sustained his self-defense claim because a witness to the stabbing, Mercutio Howard, allegedly told appellant's brother's girlfriend, Carla Terhea, that "it was self-defense." Terhea testified that Howard called her cell phone on the day of the stabbing and repeatedly yelled, "It was self-defense!" Terhea also testified that she had known Howard about three years before this conversation and that she was friendly with him. Terhea stated that she told Fort Worth Police Department Detective Sarah Jane Waters about Howard's statements.

However, Howard testified that he never called Terhea, and he did not know who she was. Instead, Howard testified that a male identifying himself as appellant's brother called him. Howard stated that he refused to talk about the incident with this person. Further, Detective Waters testified that Terhea never told her about Howard making such statements.

20

We must defer to the weight the jury gave to this contradictory testimonial evidence and must also therefore defer to the jury's determination on the issue of the veracity of Howard's statements. *Johnson*, 23 S.W.3d at 8–9; *Schiffert*, 257 S.W.3d at 16. Also, despite the conflict about Howard's statements on the day of the stabbing, Howard's testimony at trial was unambiguous—that Price swung at appellant and that in response, appellant stabbed Price. As we have concluded, this response was without legal justification. Finally, there is no evidence in the record indicating that Price had any intention of committing aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Therefore, viewing all the evidence in a neutral light, we hold that the jury's implicit rejection of appellant's self-defense claim was not clearly wrong or manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support appellant's conviction, and we overrule appellant's fourth issue.

**Conclusion**

Having overruled all of appellant's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  January 15, 2009



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-189-CR

PHILLIP BUNDY                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

The majority holds proper a jury charge that instructs the jury to return a general verdict of guilty of murder if they find (1) that the defendant either intentionally or knowingly caused death or (2) that he intended to cause substantial risk of life or serious bodily injury, in any of its forms, and committed an act clearly dangerous to human life which caused death because

"these are alternate means of committing murder."[1] The majority confuses "alternate means of committing murder" with alternative manner and means of committing the same offense. Respectfully, I must dissent.

The Court of Criminal Appeals has repeatedly explained,

> We have long held that intentional murder is a "result of conduct" offense. As a "result of conduct" offense "[w]hat matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified." Any other language relating to conduct is inconsequential.[2]

In addition to by intentionally or knowingly killing a person, murder may also be committed when the defendant causes death but intends to commit an act clearly dangerous to human life that results in death or by committing a felony other than manslaughter that results in death.[3] These additional forms of murder are, like intentional or knowing murder, "result of conduct" offenses, but they require additional proof:

> [M]urder under Section 19.02(a)(2) [now 19.02(b)(2)] is a "result" type of a crime. It is committed when (1) *the individual intends to cause serious bodily injury*, (2) commits an act clearly dangerous to human life that (3) causes the death of an individual. If we apply the definitions of "intent" under Section 6.02(a) and serious bodily injury under V.T.C.A. Penal Code, Section 1.07(a)(34) we conclude

---

[1] *See* majority op. at 10–11 & n.4.

[2] *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994) (citations omitted).

[3] Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).

2

that a prosecution . . . must first show that the individual, acting with the conscious objective or desire to create a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ, caused the death of an individual.  Thus, the first element of prosecution . . . is satisfied.

The second element of prosecution . . . *requires a showing that the individual commits an act clearly dangerous to human life*, i.e., it requires that the act intended to cause serious bodily injury be objectively *clearly dangerous to human life*.  Because the definition of serious bodily injury includes serious permanent disfigurement and protracted loss or impairment of a bodily member or organ, it does not necessarily follow that an act that intended to cause serious bodily injury was also intended to be clearly dangerous to human life.  Since an act that was intended to cause serious bodily injury may not have been intended to be clearly dangerous to human life, the statute requires that the character of the act be measured by an objective standard.  Thus, while an individual may be convicted of murder under Section 19.02(a)(1) [now 19.02(b)(1)] by intending to cause death notwithstanding that the act resulting in death was not objectively clearly dangerous to human life, the individual could not be convicted of murder under Section 19.02(a)(2) by intending to cause serious bodily injury unless the act resulting in death was objectively *clearly dangerous to human life*.  Ergo, by authorizing a conviction for murder by intending to cause death by an act, regardless of its magnitude, or by intending to cause serious bodily injury, by an act clearly dangerous to human life, the legislature has determined that 19.02(a)(1) and (a)(2) are functionally equivalent.  Thus, the requirement of a culpable mental state under Section 19.01(a), supra, is satisfied when it is established that the individual, with the intent to cause serious bodily injury, commits an act clearly dangerous to human life that results in death.  The effect of the panel opinion in requiring that a culpable mental state of "intentionally or knowingly" be applied to the conduct that is clearly dangerous to human life, was to change the character of murder under Section 19.02(a)(2), supra, from a "result" type of a crime to a "result" and "conduct" type of a crime.  Section 19.02(a)(2), supra, clearly by its terms, focuses the mental state

3

of the individual on the particular result and not on the conduct that causes death.[4]

That is, although the State would not be able to secure two convictions for murdering the same individual, the two forms of murder are mutually exclusive because they have contradicting or additional elements.

While the discussion in *Lugo-Lugo* deals with the sufficiency of the indictment's allegation of culpable mental state, it also points out that murder under what is now section 19.02(b)(2) has elements that intentional or knowing murder does not have. To convict a person of murder under section 19.02(b)(2), the State must prove "that the individual, acting with the conscious objective or desire to create a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ, caused the death of an[other] individual."[5] But, in addition, the State must also prove that the act was clearly dangerous to human life.[6] It is clear that section 19.02(b)(1) and section 19.02(b)(2) each contains at least one element that the other does not.[7]

---

[4] *Lugo-Lugo v. State*, 650 S.W.2d 72, 81–82 (Tex. Crim. App. 1983) (op. on reh'g).

[5] *Id.* at 81.

[6] *Id.*

[7] *See* Tex. Penal Code Ann. § 19.02(b)(1), (2).

4

The Fifth Circuit has stated:

> Under Texas law, § 19.02(a)(1) and § 19.02(a)(2) [now sections 19.02(b)(1) and (b)(2)] are distinct and separate crimes.  Under § (a)(1), the state had to prove that Plunkett intended to kill; § (a)(2) "plainly dispense[s] with the requirement that the actor *intend* the resulting death . . . .  This is a significant and obvious distinction between § 19.02(a)(2) and § 19.02(a)(1), the "intentional" murder statute."[8]

In discussing whether a conviction would lie for both intoxication manslaughter and felony murder in *Bigon v. State*, the Texas Court of Criminal Appeals addressed the application of *Blockburger* in a double-jeopardy context.[9] The *Bigon* court noted,

> It is obvious from the outset that, when comparing the two Texas Penal Code statutes, the offenses are not the same. . . . [D]ouble-jeopardy challenges should be made even to offenses that have differing elements under *Blockburger*, if the same "facts required" are alleged in the indictment.[10]

Intoxication manslaughter and felony murder are not the same offense under *Blockburger*, even though double jeopardy protections prevent conviction of both when there is a single death.[11]

---

[8] *Plunkett v. Estelle,* 709 F.2d 1004, 1010 (5th Cir. 1983), *cert. denied*, *McKaskle v. Plunkett*, 465 U.S. 1007 (1984).

[9] *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008).

[10] *Id.* (citations omitted).

[11] *Id.*

The focus of the two offenses is the same: the death of an individual. Both offenses are result oriented and punish one for causing the death of another, even if engaging in the behavior that ultimately ended in death but was not intended to cause the death. As we said in *Ervin*, the sameness of the result is an indication that the legislature did not intend to impose multiple punishments. In conjunction with this factor is the "allowable unit of prosecution," which is defined by the legislature and determines if one course of conduct results in more than one offense. . . . In Texas, the allowable unit of prosecution for an assaultive offense is one unit per victim, which is evidence that the legislature did not intend for one to be prosecuted for several homicides when there is only one victim.[12]

Just as in *Bigon*, in the case now before this court, the allowable unit of prosecution is the number of deaths. For double jeopardy purposes, intoxication manslaughter and felony murder, although they are different offenses, will support only a single conviction.[13] Similarly, for double jeopardy purposes, intentional murder under Texas Penal Code section 19.02(b)(1) and murder under 19.02(b)(2),[14] although they are different offenses, will support only a single conviction. The majority correctly treats intentional murder and section 19.02(b)(2) murder as the same offense because, for double jeopardy purposes, they are the same: double jeopardy protection prevents the State from securing two convictions for the act that resulted in a single death. But

---

[12] *Id.* at 371–72 (citations omitted).

[13] *Id.*

[14] Tex. Penal Code Ann. § 19.02(b)(1), (2).

6

the majority incorrectly concludes that because these are the same offense for double jeopardy purposes, intentional murder and section 19.02(b)(2) murder are the same offense for purposes of juror unanimity.

Just as a jury must unanimously decide whether a defendant is guilty of felony murder or intoxication manslaughter, a jury must unanimously determine whether a defendant is guilty of section 19.02(b)(2) murder or intentional murder. Under *Blockburger*, they are separate offenses, each requiring proof of at least one element not required by proof of the other.[15] Just as felony murder and intoxication manslaughter are different offenses, intentional murder and section 19.02(b) murder are different offenses.

As the *Plunkett* court explained, intentional murder and section 19.02(b)(2) murder are not interchangeable.[16] They are separate offenses.[17] The elements of one offense are not shared by the other; they are not mere surplusage but essential elements that must be proved.[18] And, as the *Bigon*

---

[15] *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

[16] *Plunkett,* 709 F.2d at 1010.

[17] *Id*.

[18] *See Brown v. State*, 955 S.W.2d 276, 284 (Tex. Crim. App. 1997); *see also Fazzino v. State*, 531 S.W.2d 818, 820 (Tex. Crim. App. 1976) (holding that intent to kill is not an element of murder charged under theory that accused intended to cause serious bodily injury and committed an act

court explained in discussing why felony murder and intoxication murder may be the same offense for double jeopardy purposes but are not the same offense for purposes of proof, a jury could not be charged to convict a defendant in a general verdict.[19]

The issue before this court, and the issue faced by our sister courts and by the Texas Court of Criminal Appeals, unanimity of the jury verdict, is one of fundamental due process.[20] "Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases."[21] But we must not ignore the fact that

> [f]ederal constitutional due process considerations . . . limit the state's ability to define a crime so as to dispense with the requirement of jury unanimity on the alternate means or modes of committing it. So the second step in the analysis is an evaluation of whether the lack of jury unanimity on the alternate means or modes of commission violates due process.[22]

---

dangerous to human life that caused death of individual).

[19] *Bigon*, 252 S.W.3d at 372.

[20] *See Ngo v. State*, 175 S.W.3d 738, 753 (Tex. Crim. App. 2005) (Hervey, J., dissenting) (discussing *Schad v. Arizona*, 501 U.S. 624, 111 S. Ct. 2491 (1991)).

[21] *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App.) (citing *Ngo*, 175 S.W.3d at 745 (Cochran, J., writing for majority)), *cert. denied*, 549 U.S. 957 (2006).

[22] *Id.* at 312 (citations and quotations omitted).

The majority does not address *Plunkett* in any depth, and dismisses the distinction between intentional murder and murder under section 19.02(b)(2) as merely different mental states, relying in part on *Jefferson v. State*.[23] The majority also cites *Jefferson* for the proposition that unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the State has proven the intent element beyond a reasonable doubt.[24] But this is not what *Jefferson* is all about. *Jefferson* deals only with manner and means, not with mutually exclusive elements in separate offenses.[25]

The issue in *Jefferson* was whether the jury must return a unanimous verdict regarding whether the defendant committed an act or omitted to do an act when the jury was required to find unanimously that the defendant intentionally caused injury to a child.[26] That is, the question was how do we determine what is an element that must be proved and that the jury must unanimously conclude was proved and what is merely descriptive, not requiring unanimity? In her concurring opinion, Judge Cochran offers a suggestion for making this determination:

---

[23] *Id.* at 311; majority op. at 11.

[24] Majority op. at 12.

[25] *Jefferson*, 189 S.W.3d at 315 (Cochran, J., concurring).

[26] *Id.* at 306 (Hervey, J., writing for majority).

9

[W]e must return to eighth-grade grammar to determine what elements the jury must unanimously find beyond a reasonable doubt. At a minimum, these are: the subject (the defendant); the main verb; and the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime); and the specific occasion (the date phrase within the indictment, but narrowed down to one specific incident regardless of the date alleged. Generally, adverbial phrases, introduced by the preposition "by," describe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.[27]

Applying Judge Cochran's grammar test, the two offenses we must address are distinct. Section 19.02(b)(1) requires that a person intentionally or knowingly cause the death of another (*person* I *causes* I *death*). Section 19.02(b)(2) permits conviction only if a person, with the intent or desire to create a substantial risk of death, or to cause serious permanent disfigurement, or to cause protracted loss or impairment of any bodily member or organ, does an act that is, objectively, clearly dangerous to human life and that results in the death of another (*person* I *does* I *clearly dangerous act*). Section 19.02(b)(1) does not require an act that is, objectively, clearly dangerous to human life, but it does require the specific intent to kill.[28] Section 19.02(b)(2)

---

[27]*Id.* at 315–16 (Cochran, J., concurring).

[28]*Lugo-Lugo*, 650 S.W.2d at 81–82.

10

does not require a specific intent to kill, but it does require an act that is clearly dangerous to human life.[29]

For example, a person may, with the intent or desire to cause protracted impairment of the use of a hand to prevent a competitor's winning a piano competition, break the fingers of the hand, inadvertently creating a blood clot that kills the person. That person has not violated 19.02(b)(2) because breaking fingers is not an act that is, objectively, clearly dangerous to human life, although the actor acted with intent to cause protracted impairment of the use of the other's hand.

The elements of intentional murder and section 19.02(b)(2) murder are not merely descriptive; they are essential elements. Because the majority dismisses the conflicting elements of sections 19.02(b)(1) and 19.02(b)(2) as mere differing manner and means of committing the same offense, I must respectfully dissent.

_____LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: January 15, 2009

---

[29]*Plunkett*, 709 F.2d at 1010.

11