[COMMENT1] 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-189-CR

 

 

PHILLIP BUNDY                                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction

Appellant Phillip Bundy appeals his conviction
for murder.  In four issues, he asserts
that the trial court erred by excluding character evidence of the deceased=s
violent nature, refusing to include a requested jury instruction regarding
apparent danger, and failing to require a unanimous verdict through the
language of the jury charge, and that the evidence is factually insufficient to
support the jury=s rejection of his self-defense
claim.  We affirm.








Background Facts 

At around three o=clock in
the afternoon of February 27, 2005, at an apartment complex within a high-crime
area of Fort Worth, Rodney Price was 
drinking beers and smoking cigarettes with several other individuals.[1]  About that time, appellant, who was also at
the complex, became angry and began carrying a knife while cursing.  A dispute ensued between appellant and
Price.  Price, who was larger than
appellant, took off his jacket, and then swung his fist at appellant and missed
as appellant ducked.  Appellant then
quickly stuck the knife into Price=s
side.  Price began running as appellant
chased him and attempted to stab him again. 
Price fell in the parking lot and raised his hands in an effort to
protect himself, then ran toward a street, with appellant continuing to chase
him.  Upon reaching the street, Price
collapsed as appellant ran away.








After a short time, medical personnel arrived to
care for Price, and police arrived to document and photograph the crime scene
and take statements from witnesses who had seen the fight.  At 3:42 p.m., Price was pronounced dead.
Price died from a stab wound to his left chest; he also had defensive cut
wounds on his hands.  The witnesses later
identified appellant as the man who had stabbed Price.  During the altercation, Price never displayed
any weapons, and officers did not find any weapons at the scene.

A grand jury indicted appellant for murder.  At trial, appellant argued that he acted in
self-defense, and the State conceded that Price was the first aggressor.  A witness called by appellant testified that
on the afternoon these events occurred, she spoke with an eye witness who
yelled repeatedly, A[I]t was self-defense!@  Appellant=s
counsel attempted to offer evidence that Price had two convictions for violent
offenses for the purpose of showing that Price Awas a
violent man and he acted in a violent way,@ but the
trial court sustained the State=s
objection to this evidence.  Appellant=s
counsel also requested that language regarding a theory of apparent danger be
placed in the jury charge, but the court rejected this request.  After the evidence was closed and counsel
presented their arguments, the jury convicted appellant of murder and assessed
punishment at fifteen years>
confinement.

Exclusion of Character Evidence








In his first issue, appellant asserts that the
trial court erred in excluding  character
evidence of Price=s violent nature under Texas
Rule of Evidence 404(a)(2).  We review a
trial court=s decision to exclude evidence
under an abuse of discretion standard, and we must therefore affirm the trial
court=s
decision unless it is beyond the Azone of
reasonable disagreement.@ 
Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997).

To preserve error in a trial court=s
exclusion of evidence, the substance of the excluded evidence must be shown by
an offer of proof unless it is apparent from the context of the questions
asked.  Tex. R. Evid. 103(a)(2); Tex. R.
App. P. 33.2; Chambers v. State, 866 S.W.2d 9, 27 (Tex. Crim. App.
1993), cert. denied, 511 U.S. 1100 (1994); Fairow v. State, 943
S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997). 
The purpose of the offer of proof is to show what the witness=s
testimony would have beenCotherwise, there is nothing
before the appellate court to show reversible error in the trial court=s
ruling.  Stewart v. State, 686
S.W.2d 118, 122 (Tex. Crim. App. 1984), cert. denied, 474 U.S.
866 (1985); see Guidry v. State, 9 S.W.3d 133, 153 (Tex. Crim. App.
1999).  Error may be preserved by an
offer of proof in question and answer form or in the form of a concise
statement by counsel.  Tex. R. Evid.
103(b); Love v. State, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993).  Counsel=s
concise statement must include a summary of the proposed testimony.  Love, 861 S.W.2d at 901.  Error is not preserved if the offer of proof
is inadequate.  Warner v. State,
969 S.W.2d 1, 2 (Tex. Crim. App. 1998).








At trial, a lengthy exchange took place between
counsel and the court regarding whether Price=s prior
violent acts would be admissible. 
Appellant=s counsel stated that he
intended to ask a witness to the stabbing about two prior convictions regarding
violence allegedly committed by Price through a Ahave-you-heard@
question, for the purpose of showing what Price=s Aactual
intent was.@ 
However, appellant never submitted this question to the witness through
a formal offer of proof, nor did he indicate what he believed the witness=s answer
would have been.  Because nothing in the
record indicates what knowledge the witness had as to Price=s
previous acts, the substance of the excluded testimony cannot be
determined.  Therefore, appellant failed
to preserve error.  See Stewart,
686 S.W.2d at 122.  Moreover, we have
held that under Texas Rule of Evidence 404(b)

[t]wo conditions
precedent must exist . . . before an extraneous act of the victim will be
admissible to support a claim of self‑defense: 1) some ambiguous or
uncertain evidence of a violent or aggressive act by the victim must exist
that tends to show the victim was the first aggressor; and 2) the proffered
evidence must tend to dispel the ambiguity or explain the victim=s conduct.

 








Reyna v. State, 99 S.W.3d 344, 347 (Tex. App.CFort
Worth 2003, pet ref=d) (emphasis added); see also
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (explaining that
such evidence of prior acts is admissible to show that Athe
deceased was the first aggressor@).  Here, the witnesses to the events agreed at
trial that Price swung his fist at appellant before appellant stabbed Price,
and the State conceded this fact. 
Therefore, there was no ambiguity that the introduction of the victim=s
previous violent acts would have dispelled.[2]

For these reasons, we overrule appellant=s first
issue.

Apparent Danger Instruction

In his second issue, appellant argues that the
trial court erred in excluding a requested jury instruction regarding apparent
danger.  Specifically, appellant
requested an instruction at trial that would have stated:

In determining the
existence of real or apparent danger, . . . you should consider
all the facts and circumstances in the case and evidence before you together
with all the relevant facts and circumstances going to show the condition of
the mind of the Defendant at the time of the occurrence in question.  And in considering such circumstances, you
should place yourselves in Defendant=s position at that time and view them from his
standpoint alone.

 

After hearing argument from counsel, the court excluded this
instruction. 








Appellate review of error in a jury charge
involves a two‑step process.  Abdnor
v. State, 871 S.W.2d 726, 731B32 (Tex.
Crim. App. 1994).  Initially, we must
determine whether error occurred; if so, we must then evaluate whether
sufficient harm resulted from the error to require reversal.  Id. 
Error in the charge, if timely objected to in the trial court, requires
reversal if the error was Acalculated
to injure the rights of [the] defendant,@ which
means no more than that there must be some harm to the accused from the
error.  Tex. Code Crim. Proc. Ann. art.
36.19 (Vernon 2006); see also Abdnor, 871 S.W.2d at 732; Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).  In other words, a properly preserved error
will require reversal as long as the error is not harmless.  Almanza, 686 S.W.2d at 171.  In making this determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Id.; see Ovalle v. State, 13
S.W.3d 774, 786 (Tex. Crim. App. 2000).








Texas courts have held that when a defendant
claims self-defense, his rights are fully preserved (and the concept of Aapparent
danger@ is
properly presented) when a jury charge (1) states that a defendant=s
conduct is justified if he reasonably believed that the deceased was using or
attempting to use unlawful deadly force against the defendant, and (2)
correctly defines Areasonable belief.@  Valentine v. State, 587 S.W.2d 399,
401 (Tex. Crim. App. [Panel Op.] 1979); Venegas v. State, 660
S.W.2d 547, 551 (Tex. App.CSan
Antonio 1983, no pet.) (concluding that by defining Areasonable
belief,@ the
trial court Aadequately presented appellant=s
defensive theory@ of apparent danger).  In other words, by defining Areasonable
belief@ in
accordance with the penal code, a trial court adequately relates to the jury
that Aa
reasonable apprehension of danger, whether it be actual or apparent, is all
that is required before one is entitled to exercise the right of self‑defense
against his adversary.@ 
Valentine, 587 S.W.2d at 401; see also Price v. State, No.
02‑02‑00268‑CR, 2003 WL 1351991, at *1 (Tex. App.CFort
Worth Mar. 20, 2003, no pet.) (mem. op., not designated for publication)
(explaining that by defining Areasonable
belief,@ the
trial court Aadequately presented the
appellant=s defensive theory and protected
his rights@).[3]








Here, the court=s charge
instructed the jury that Aa person is justified in using
deadly force against . . . another when and to the degree he
reasonably believes the force is immediately necessary to protect himself
against the other=s use or attempted use of
unlawful deadly force.@ 
The charge further explained that a person is justified in using deadly
force Awhen and
to the degree he reasonably believes the deadly force is immediately necessary
to protect himself against the other=s use or
attempted use of unlawful deadly force.@  Then the charge defined Areasonable
belief@ as Aa belief
that would be held by an ordinary and prudent person in the same circumstances
as the Defendant.@ 

We hold that these instructions tracked the
standards and definitions relating to self defense, deadly force, and
reasonable belief provided in the penal code and therefore fully preserved
appellant=s rights.  See Tex. Penal Code Ann. '' 1.07(a)(42),
9.31, 9.32 (Vernon Supp. 2008). 
Therefore, we overrule appellant=s second
issue.

Verdict Unanimity 

In his third issue, appellant contends that the
trial court gave a defective charge because it failed to require the jury to
agree on a unanimous verdict.  Appellant
admits that he did not object to the charge on this ground.








If there is error in the court=s charge
but the appellant did not object to it at trial, we must decide whether it
created such harm that appellant did not have a fair and impartial trialCin
short, that Aegregious harm@ has
occurred.  Almanza, 686 S.W.2d at
171; see Tex. Code Crim. Proc. Ann. art. 36.19; Hutch v. State,
922 S.W.2d 166, 171 (Tex. Crim. App. 1996). 
The purpose of this review is to illuminate the actual, not just
theoretical, harm to the accused.  Almanza,
686 S.W.2d at 174.  Egregious harm is a
difficult standard to prove and must be determined on a case‑by‑case
basis.  Ellison v. State, 86
S.W.3d 226, 227 (Tex. Crim. App. 2002); Hutch, 922 S.W.2d at 171.  

Jury unanimity is required in all criminal
cases.  Ngo v. State, 175 S.W.3d
738, 745 (Tex. Crim. App. 2005).  In
other words, every juror must agree that Athe
defendant committed the same, single, specific criminal act.@  Id. 
Appellant reasons that because the charge in this case defined murder
through separate theories with separate mental states,[4]
but contained only one  application
paragraph, the jury was not required to unanimously agree that the State proved
the elements of the offense.   However,
we recently rejected this exact argument in Davis v. State, 268 S.W.3d
683, 710B12 (Tex.
App.CFort
Worth 2008, pet. filed).








In Davis, the jury was charged with the
same variant means of committing murder as the jury in this case.  Id. at 712. As in this case, the
appellant in Davis argued that charging murder in this method resulted
in a nonunanimous verdict.  Id. at
710.  In rejecting that assertion, we
held that

[w]here the legislature
has specified that any of several different mental states will satisfy the
intent or mens rea element of a particular crime, unanimity is not
required on the specific alternate mental state as long as the jury unanimously
agrees that the State has proved the intent element beyond a reasonable
doubt.  That is, the jury did not need to
unanimously agree on the preliminary factual issue of Davis=s mental state when he
stabbed Latarsha, as long as it agreed on the bottom lineChe murdered her.

 

The jury here was
authorized in the charge of the court to find Davis guilty of murder if he Aintentionally or
knowingly cause[d] the death of an individual or intentionally, with intent to
cause serious bodily injury, commit[ted] an act clearly dangerous to human life
and cause[d] the death of an individual@; the jury returned a general verdict finding
Davis Aguilty of the offense of
murder as charged in the indictment.@ The jury unanimity requirement is not violated
where, as here, the defendant was indicted under a statute providing alternate
means of committing the same offense.       


 








Id. at 712 (citations omitted); see also Schad v.
Arizona,  501 U.S. 624, 632,
111 S. Ct. 2491, 2497 (1991) (explaining that there Ais no
general requirement that the jury reach agreement on the preliminary factual
issues which underlie the verdict@); Jefferson
v. State, 189 S.W.3d 305, 311 (Tex. Crim. App.), cert. denied, 549
U.S. 957 (2006) (stating that when the legislature has Aspecified
that any of several different mental states will satisfy the intent or mens rea
element of a particular crime, unanimity is not required on the specific
alternate mental state as long as the jury unanimously agrees that the [S]tate
has proven the intent element beyond a reasonable doubt@).








The dissent quotes extensive passages from cases
addressing the Texas murder statute where the issues decided did not involve
unanimity, but rather concerned other issues related to jury charges or
indictments.  See Cook v. State,
884 S.W.2d 485, 490B92 (Tex. Crim. App. 1994)
(reversing a murder conviction because the jury charge applied the intent
requirement to engaging in conduct rather than the result of the conduct); Lugo‑Lugo
v. State, 650 S.W.2d 72, 81B82 (Tex.
Crim. App. 1983) (op. on reh=g)
(analyzing a challenge to the language of an indictment); Plunkett v.
Estelle, 709 F.2d 1004, 1009B10 (5th
Cir. 1983), cert. denied, McKaskle v. Plunkett, 465 U.S. 1007
(1984) (concluding that a conviction was improper where the jury charge
contained a non-indicted theory of murder).[5]  These cases all aptly describe that there are
variant methods of committing murder in this state.  However, the decisions do not address the Acrucial@
concerns of the unanimity requirementCthat a
jury cannot convict a defendant without agreeing on the specific actus reus which
occurred, nor convict the defendant of wrongdoing by agreeing that a single
incident occurred that could be classified as multiple offenses.  See Ngo, 175 S.W.3d at 744B47
(concluding that the unanimity requirement was violated because the jury was
not required to agree whether the defendant had stolen a credit card, received
it while knowing it was stolen, or presented it with the intent to obtain a
fraudulent benefit); Aguirre v. State, 732 S.W.2d 320, 326 (Tex. Crim.
App. 1987) (op. on reh=g) (affirming a murder
conviction where the indictment charged both intentional and felony murder, but
the jury charge only contained a general verdict, because the @indictment
did not allege different offenses but only alleged different ways of committing
the same offense@).  








The dissent cites the holding of the Court of
Criminal Appeals in Jefferson, but then dismisses its importance by
applying its concurring opinion. 
Dissenting op. at 8B11.  In Jefferson, the majority of the
Court held that because the Aessential
element or focus of [the serious bodily injury to a child offense] is the
result of the defendant=s
conduct . . . and not the possible combinations of conduct that cause the
result,@ the jury
was not required to be unanimous about such Acombinations
of conduct.@ 
Jefferson, 189 S.W.3d at 312 (emphasis added).  As the dissent notes, murder is likewise a
result-focused offense.  Dissenting
op. at 2.  See Schroeder v. State,
123 S.W.3d 398, 400 (Tex. Crim. App. 2003) (explaining that murder is a Aresult
of conduct@ offense).  Like the offense at issue in Jefferson,
therefore, the jury is not required to unanimously agree about the Acombinations
of conduct@ required to sustain a murder
conviction, because these combinations of conduct do not create separate
offenses.  Aguirre, 732 S.W.2d at
326; see also Huffman v. State, 267 S.W.3d 902, 907 (Tex. Crim. App.
2008) (stating that A[i]f the focus of the offense is
the resultCthat is, the offense is a >result
of conduct= crimeCthen
different types of results are considered to be separate offenses, but
different types of conduct are not@)
(emphasis added).

Because the jury in this case was only asked to
examine one actus reus (the stabbing) and one result (Price=s
death), and because precedent clearly holds that, for the purposes of jury
unanimity, the variant means of murder comprise only one offense, there is no
violation of the unanimity requirement in this case.[6]  As in Davis, the charge in this case
merely provided the jury with alternate means of committing the same offenseCmurder.  Accordingly, we hold that the charge did not
fail to require the jury to agree on a unanimous verdict, and we overrule
appellant=s third issue. 








Factual Sufficiency Challenge

In his final issue, appellant contends that the
evidence presented at trial was factually insufficient to reject his claim of
self-defense.  Because self-defense is
classified as a defense rather than an affirmative defense, we apply the
factual sufficiency review generally applied to convictions to appellant=s challenge
of the jury=s implicit finding beyond a
reasonable doubt against his self-defense claim.  See Denman v. State, 193 S.W.3d 129,
133 n.2 (Tex. App.CHouston [1st Dist.] 2006, pet.
ref=d); Manuel
v. State, 981 S.W.2d 65, 68 (Tex. App.CFort
Worth 1998), aff=d 994
S.W.2d 658 (Tex. Crim. App. 1999) (explaining that the State has the burden to
disprove self-defense beyond a reasonable doubt). 

Standard of Review








        When reviewing the factual sufficiency of the evidence to
support a conviction, we view all the evidence in a neutral light, favoring
neither party.  Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d
795, 799 (Tex. Crim. App. 2005).  We then
ask whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the fact‑finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact‑finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at 414B15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.

In determining whether the evidence is factually
insufficient, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id.  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact‑finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the fact‑finder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.








An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  Moreover, an
opinion reversing and remanding on factual insufficiency grounds must detail
all the evidence and clearly state why the finding in question is factually
insufficient and under which ground.  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23
S.W.3d at 7. 

Analysis








The State conceded and the evidence established
that Price was the first aggressor. 
Specifically, Price swung his fist at appellant and appellant ducked
before appellant stabbed Price with a knife. 
However, testimony at trial differed as to whether Price threatened
appellant before attempting to punch him. 
One witness to the events testified that Price said he was going to Abeat
[appellant=s] ass@ when he
was about two feet away, another witness testified that Price did not say
anything before swinging, and a third witness indicated that appellant was the
verbal aggressor while Price Adid
nothing@ and Ajust
stood there.@ 
The evidence further established that Price had been smoking crack
cocaine and drinking beer earlier that afternoon, that Price was bigger than
appellant, that Price may have Apicked
on@
appellant in the week preceding the incident, and that one of the eye witnesses
to the stabbing may have exclaimed later that day that Ait was
self-defense@ (the evidence conflicted
regarding this statement, as explained below). 
However, the evidence also indicated that Price displayed no weapons,
that appellant was already angry and carrying a knife before approaching Price,
and that appellant attempted to stab Price again as Price was trying to run away.

Appellant argues that he was justified in using
deadly force because (1) Price was the first aggressor and had threatened that
he was going to Abeat [appellant=s] ass@, (2)
Price had been smoking crack cocaine that day, and (3) an eye‑witness to
the stabbing allegedly opined that Ait was
self‑defense!@ 


Viewing the facts in a neutral light, we cannot
agree with appellant that the evidence was factually insufficient to justify
the jury=s
rejection of his self-defense claim. 
Deadly force in self-defense is justified only when a person reasonably
believes the force is immediately necessary to protect the actor against the
other=s use or
attempted use of unlawful deadly force or to prevent the other=s
imminent commission of aggravated kidnapping, murder, sexual assault,
aggravated sexual assault, robbery, or aggravated robbery.  Tex. Penal Code Ann. ' 9.32;
Schiffert v. State, 257 S.W.3d 6, 14 (Tex. App.CFort
Worth 2008, pet. dism=d).








The facts recited above cannot support appellant=s
assertion that he had a reasonable belief that Price was attempting to use
deadly force or to commit one of these offenses.  First, appellant=s deadly
force was not a justifiable response to Price=s
attempt to punch appellant, which was not deadly force.  ADeadly
force@ is
force Aintended
or known by the actor to cause, or in the manner of its use or intended use is
capable of causing, death or serious bodily injury.@  Tex. Penal Code Ann. ' 9.01(3)
(Vernon Supp. 2008).  ASerious
bodily injury@ is an injury that creates a Asubstantial
risk of death or that causes death, serious permanent disfigurement, or
protracted loss or impairment of the function of any bodily member or organ.@  Id. ' 1.07(a)(46)
(Vernon Supp. 2008).  A sole attempted
punch does not satisfy these definitions. 
See Schiffert, 257 S.W.3d at 14 (concluding
that a punch could not demonstrate an Aattempt
to use deadly force@); see also Castilleja v.
State, No. 07‑06‑00062‑CR, 2007 WL 2163111, at *4
(Tex. App.CAmarillo July 24, 2007, pet.
struck) (mem. op., not designated for publication) (holding that the use of
deadly force was not a proper response to a fist fight).








Second, even if Price verbally threatened that he
was going to Abeat [appellant=s] ass@ (of
which, as noted, the evidence conflicted), such a threat also does not justify
appellant=s use of deadly force, because
it does not indicate any intention to cause death or serious bodily injury as
defined by these statutes.  See
Kirkpatrick v. State, 633 S.W.2d 357, 358 (Tex. App.CFort
Worth 1982, pet. ref=d, untimely filed) (deciding
that the appellant was not entitled to use deadly force when the victim Ahollered@ at him
and threatened to Akick his ass@).  Third, though there is evidence in the record
that Price smoked crack cocaine on the day of the stabbing, there is no
evidence in the record that appellant knew he had done so.  Therefore, this fact cannot contribute to any
Areasonable
belief@ held by
appellant that deadly force was immediately necessary.

Next, appellant contends that the jury should
have sustained his self-defense claim because a witness to the stabbing,
Mercutio Howard, allegedly told appellant=s
brother=s
girlfriend, Carla Terhea, that Ait was
self-defense.@ 
Terhea testified that Howard called her cell phone on the day of the
stabbing and repeatedly yelled, AIt was
self-defense!@ 
Terhea also testified that she had known Howard about three years before
this conversation and that she was friendly with him.  Terhea stated that she told Fort Worth Police
Department Detective Sarah Jane Waters about Howard=s
statements.

However, Howard testified that he never called
Terhea, and he did not know who she was. 
Instead, Howard testified that a male identifying himself as appellant=s brother
called him.  Howard stated that he
refused to talk about the incident with this person.  Further, Detective Waters testified that
Terhea never told her about Howard making such statements.








We must defer to the weight the jury gave to this
contradictory testimonial evidence and must also therefore defer to the jury=s
determination on the issue of the veracity of Howard=s
statements.  Johnson, 23 S.W.3d at
8B9; Schiffert,
257 S.W.3d at 16.  Also, despite the
conflict about Howard=s statements on the day of the
stabbing, Howard=s testimony at trial was unambiguousCthat
Price swung at appellant and that in response, appellant stabbed Price.  As we have concluded, this response was
without legal justification.  Finally,
there is no evidence in the record indicating that Price had any intention of
committing aggravated kidnapping, murder, sexual assault, aggravated sexual
assault, robbery, or aggravated robbery.

Therefore, viewing all the evidence in a neutral
light, we hold that the jury=s
implicit rejection of appellant=s
self-defense claim was not clearly wrong or manifestly unjust.  Watson, 204 S.W.3d at 414B15,
417.  Accordingly, we hold that the
evidence is factually sufficient to support appellant=s
conviction, and we overrule appellant=s fourth
issue.








                                             Conclusion

Having overruled all of appellant=s
issues, we affirm the trial court=s
judgment.

 

                                                        TERRIE
LIVINGSTON

JUSTICE

 

 

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

 

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  January 15, 2009











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-189-CR

 

 

PHILLIP
BUNDY                                                                   APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------

 








The majority holds proper a jury charge that
instructs the jury to return a general verdict of guilty of murder if they find
(1) that the defendant either intentionally or knowingly caused death or (2)
that he intended to cause substantial risk of life or serious bodily injury, in
any of its forms, and committed an act clearly dangerous to human life which
caused death because Athese are alternate means of
committing murder.@[1]  The
majority confuses Aalternate means of committing
murder@ with
alternative manner and means of committing the same offense.  Respectfully, I must dissent.

The Court of Criminal Appeals has repeatedly
explained, 

We have long held that
intentional murder is a Aresult of conduct@ offense.  As a Aresult of conduct@ offense A[w]hat matters is that
the conduct (whatever it may be) is done with the required culpability to
effect the result the Legislature has specified.@  Any other language relating to conduct is
inconsequential.[2]

 

In addition to by intentionally or knowingly
killing a person, murder may also be committed when the defendant causes death
but intends to commit an act clearly dangerous to human life that results in
death or by committing a felony other than manslaughter that results in death.[3]  These
additional forms of murder are, like intentional or knowing murder, Aresult
of conduct@ offenses, but they require
additional proof:








[M]urder under Section
19.02(a)(2) [now 19.02(b)(2)] is a Aresult@ type of a crime. 
It is committed when (1) the individual intends to cause serious
bodily injury, (2) commits an act clearly dangerous to human life that (3)
causes the death of an individual.  If we
apply the definitions of Aintent@ under Section 6.02(a)
and serious bodily injury under V.T.C.A. Penal Code, Section 1.07(a)(34) we
conclude that a prosecution . . . must first show that the individual, acting
with the conscious objective or desire to create a substantial risk of death,
serious permanent disfigurement, or protracted loss or impairment of any bodily
member or organ, caused the death of an individual.  Thus, the first element of prosecution . . .
is satisfied.

 








The second element of prosecution . . . requires a showing that the
individual commits an act clearly dangerous to human life, i.e., it
requires that the act intended to cause serious bodily injury be objectively clearly
dangerous to human life.  Because the
definition of serious bodily injury includes serious permanent disfigurement
and protracted loss or impairment of a bodily member or organ, it does not
necessarily follow that an act that intended to cause serious bodily injury was
also intended to be clearly dangerous to human life.  Since an act that was intended to cause
serious bodily injury may not have been intended to be clearly dangerous to
human life, the statute requires that the character of the act be measured by
an objective standard.  Thus, while an
individual may be convicted of murder under Section 19.02(a)(1) [now
19.02(b)(1)] by intending to cause death notwithstanding that the act resulting
in death was not objectively clearly dangerous to human life, the individual
could not be convicted of murder under Section 19.02(a)(2) by intending to
cause serious bodily injury unless the act resulting in death was objectively
clearly dangerous to human life. 
Ergo, by authorizing a conviction for murder by intending to cause death
by an act, regardless of its magnitude, or by intending to cause serious bodily
injury, by an act clearly dangerous to human life, the legislature has
determined that 19.02(a)(1) and (a)(2) are functionally equivalent.  Thus, the requirement of a culpable mental state
under Section 19.01(a), supra, is satisfied when it is established that the
individual, with the intent to cause serious bodily injury, commits an act
clearly dangerous to human life that results in death.  The effect of the panel opinion in requiring
that a culpable mental state of Aintentionally or knowingly@ be applied to the
conduct that is clearly dangerous to human life, was to change the character of
murder under Section 19.02(a)(2), supra, from a Aresult@ type of a crime to a Aresult@ and Aconduct@ type of a crime.  Section 19.02(a)(2), supra, clearly by its
terms, focuses the mental state of the individual on the particular result and
not on the conduct that causes death.[4]

 

That is, although the State would not be able to secure two
convictions for murdering the same individual, the two forms of murder are
mutually exclusive because they have contradicting or additional elements.

While the discussion in Lugo-Lugo deals
with the sufficiency of the indictment=s
allegation of culpable mental state, it also points out that murder under what
is now section 19.02(b)(2) has elements that intentional or knowing murder does
not have.  To convict a person of murder
under section 19.02(b)(2), the State must prove Athat the
individual, acting with the conscious objective or desire to create a
substantial risk of death, serious permanent disfigurement, or protracted loss
or impairment of any bodily member or organ, caused the death of an[other]
individual.@[5]  But,
in addition, the State must also prove that the act was clearly dangerous to
human life.[6]  It is clear that section 19.02(b)(1) and
section 19.02(b)(2) each contains at least one element that the other does not.[7]








        The Fifth Circuit has stated:

Under Texas law, ' 19.02(a)(1) and ' 19.02(a)(2) [now sections
19.02(b)(1) and (b)(2)] are distinct and separate crimes.  Under ' (a)(1), the state had to prove that Plunkett intended to
kill; ' (a)(2) Aplainly dispense[s] with the
requirement that the actor intend the resulting death . . . .  This is a significant and obvious distinction
between ' 19.02(a)(2) and ' 19.02(a)(1), the Aintentional@ murder statute.@[8]

 

In discussing whether a conviction would lie for
both intoxication manslaughter and felony murder in Bigon v. State, the
Texas Court of Criminal Appeals addressed the application of Blockburger
in a double-jeopardy context.[9]
The Bigon court noted, 

It is obvious from the
outset that, when comparing the two Texas Penal Code statutes, the offenses are
not the same. . . . [D]ouble‑jeopardy challenges should be made
even to offenses that have differing elements under Blockburger, if the
same Afacts required@ are alleged in the
indictment.[10]  

 

Intoxication manslaughter and felony murder are not the same offense
under Blockburger, even though double jeopardy protections prevent
conviction of both when there is a single death.[11]  








The focus of the two offenses is the same:  the death of an individual.  Both offenses are result oriented and punish
one for causing the death of another, even if engaging in the behavior that
ultimately ended in death but was not intended to cause the death.  As we said in Ervin, the sameness of
the result is an indication that the legislature did not intend to impose
multiple punishments.  In conjunction
with this factor is the Aallowable unit of
prosecution,@ which is defined by the
legislature and determines if one course of conduct results in more than one
offense. . . . In Texas, the allowable unit of prosecution for an assaultive
offense is one unit per victim, which is evidence that the legislature did not
intend for one to be prosecuted for several homicides when there is only one
victim.[12]

 








Just as in Bigon, in the case now before
this court, the allowable unit of prosecution is the number of deaths.  For double jeopardy purposes, intoxication
manslaughter and felony murder, although they are different offenses, will
support only a single conviction.[13]  Similarly, for double jeopardy purposes,  intentional murder under Texas Penal Code
section 19.02(b)(1) and murder under 19.02(b)(2),[14] although they are different offenses, will
support only a single conviction.  The
majority correctly treats intentional murder and section 19.02(b)(2) murder as
the same offense because, for double jeopardy purposes, they are the same:
double jeopardy protection prevents the State from securing two convictions for
the act that resulted in a single death. 
But the majority incorrectly concludes that because these are the same
offense for double jeopardy purposes, intentional murder and section
19.02(b)(2) murder are the same offense for purposes of juror unanimity.  

Just as a jury must unanimously decide whether a
defendant is guilty of felony murder or intoxication manslaughter, a jury must
unanimously determine whether a defendant is guilty of section 19.02(b)(2)
murder or intentional murder.  Under Blockburger,
they are separate offenses, each requiring proof of at least one element not
required by proof of the other.[15]  Just as felony murder and intoxication
manslaughter are different offenses, intentional murder and section 19.02(b)
murder are different offenses.








As the Plunkett court explained,
intentional murder and section 19.02(b)(2) murder  are not interchangeable.[16]  They
are separate offenses.[17]  The elements of one offense are not shared by
the other; they are not mere surplusage but essential elements that must be
proved.[18]  And, as the Bigon court explained in
discussing why felony murder and intoxication murder may be the same offense
for double jeopardy purposes but are not the same offense for purposes of
proof, a jury could not be charged to convict a defendant in a general verdict.[19]       

The issue before this court, and the issue faced
by our sister courts and by the Texas Court of Criminal Appeals, unanimity of
the jury verdict, is one of fundamental due process.[20]   AUnder
our state constitution, jury unanimity is required in felony cases, and, under
our state statutes, unanimity is required in all criminal cases.@[21]  But we must not ignore the fact that 

[f]ederal constitutional due process
considerations . . . limit the state=s
ability to define a crime so as to dispense with the requirement of jury
unanimity on the alternate means or modes of committing it.  So the second step in the analysis is an
evaluation of whether the lack of jury unanimity on the alternate means or
modes of commission violates due process.[22] 








The majority does not address Plunkett in
any depth, and dismisses the distinction between intentional murder and murder
under section 19.02(b)(2) as merely different mental states, relying in part on
Jefferson v. State.[23] The
majority also cites Jefferson for the proposition that unanimity is not
required on the specific alternate mental state as long as the jury unanimously
agrees that the State has proven the intent element beyond a reasonable doubt.[24]  But
this is not what Jefferson is all about. 
Jefferson deals only with manner and means, not with mutually
exclusive elements in separate offenses.[25]  

The issue in Jefferson was whether the
jury must return a unanimous verdict regarding whether the defendant committed
an act or omitted to do an act when the jury was required to find unanimously
that the defendant intentionally caused injury to a child.[26]  That
is, the question was how do we determine what is an element that must be proved
and that the jury must unanimously conclude was proved and what is merely descriptive,
not requiring unanimity?  In her
concurring opinion, Judge Cochran offers a suggestion for making this
determination:








        [W]e
must return to eighth‑grade grammar to determine what elements the jury
must unanimously find beyond a reasonable 
doubt.  At a minimum, these
are:  the subject (the defendant);  the main verb; and the direct object if the
main verb requires a direct object (i.e., the offense is a result‑oriented
crime);  and the specific occasion (the
date phrase within the indictment, but narrowed down to one specific incident
regardless of the date alleged. 
Generally, adverbial phrases, introduced by the preposition Aby,@ describe the manner and
means of committing the offense.  They
are not the gravamen of the offense, nor elements on which the jury must be
unanimous.[27]

 








Applying Judge Cochran=s
grammar test, the two offenses we must address are distinct.  Section 19.02(b)(1) requires that a person
intentionally or knowingly cause the death of another (person I causes
I death). Section 19.02(b)(2) permits conviction only if a person, with
the intent or desire to create a substantial risk of death, or to cause serious
permanent disfigurement, or to cause protracted loss or impairment of any
bodily member or organ, does an act that is, objectively, clearly dangerous to
human life and that results in the death of another (person I does I
clearly dangerous act). 
Section 19.02(b)(1) does not require an act that is, objectively,
clearly dangerous to human life, but it does require the specific intent to
kill.[28]  Section 19.02(b)(2) does not require a
specific intent to kill, but it does require an act that is clearly dangerous
to human life.[29]

For example, a person may, with the intent or
desire to cause protracted impairment of the use of a hand to prevent a
competitor=s winning a piano competition,
break the fingers of the hand, inadvertently creating a blood clot that kills
the person.  That person has not violated
19.02(b)(2) because breaking fingers is not an act that is, objectively,
clearly dangerous to human life, although the actor acted with intent to cause
protracted impairment of the use of the other=s hand. 

The elements of intentional murder and section
19.02(b)(2) murder are not merely descriptive; they are essential
elements.  Because the majority dismisses
the conflicting elements of sections 19.02(b)(1) and 19.02(b)(2) as mere
differing manner and means of committing the same offense, I must respectfully
dissent.

 

LEE
ANN DAUPHINOT

JUSTICE

 

PUBLISH

DELIVERED:  January 15,
2009  











[1]Testimony at trial also
indicated that Price had been smoking crack cocaine earlier that day.





[2]Evidence of a deceased=s character for violence
may also be admissible to demonstrate that the defendant believed the force
used Awas immediately necessary
to protect herself from the deceased.@  Mozon
v. State, 991 S.W.2d 841, 845 (Tex. Crim. App. 1999).  However, appellant cannot sustain his
argument that the evidence was wrongly excluded on this ground because the
proposed Ahave-you-heard@ question was intended to
be directed at a third-party witness to the events, rather than appellant
himself, and therefore had no relation to appellant=s subjective belief.





[3]We note that at oral
argument, counsel for appellant conceded that current precedent weighs against
his argument on this issue.





[4]The charge instructed the
jury to find appellant guilty if he either intentionally or knowingly caused
Price=s death, or if with the
intent to cause serious bodily injury, he intentionally committed an act
clearly dangerous to human life which caused Price=s death.  These are alternate means for committing
murder under section 19.02(b) of the penal code.  Tex. Penal Code Ann. ' 19.02(b) (Vernon 2003).





[5]We note that while
federal Fifth Circuit decisions may be persuasive, we are not obligated to
follow them in the same way as we are obligated to follow the precedent of our
State=s highest courts and the
United States Supreme Court.  See
Penrod Drilling Corp. v. Williams, 868 S.W.2d 294, 296 (Tex. 1993).





[6]We note that our sister
courts have come to the same conclusion on this issue.  See, e.g., Williams v. State, No. 03‑05‑00460‑CR,
2008 WL 744710, at *5 (Tex. App.CAustin Mar. 21, 2008, no pet.) (mem. op., not
designated for publication); Yost v. State, 222 S.W.3d 865, 877B78 (Tex. App.C Houston [14th Dist.]
2007, pet. ref=d).





[1]See majority op. at 10B11 & n.4.





[2]Cook v. State, 884 S.W.2d 485, 490
(Tex. Crim. App. 1994) (citations omitted).





[3]Tex. Penal Code Ann. ' 19.02(b) (Vernon 2003).





[4]Lugo-Lugo v. State, 650 S.W.2d 72, 81B82 (Tex. Crim. App. 1983)
(op. on reh=g).





[5]Id. at 81.





[6]Id.





[7]See Tex. Penal Code Ann. ' 19.02(b)(1), (2).





[8]Plunkett v. Estelle, 709 F.2d 1004, 1010 (5th
Cir. 1983), cert. denied, McKaskle v. Plunkett, 465 U.S. 1007
(1984).





[9]Bigon v. State, 252 S.W.3d 360, 370
(Tex. Crim. App. 2008).





[10]Id. (citations omitted).





[11]Id.





[12]Id. at 371B72 (citations omitted).





[13]Id.





[14]Tex. Penal Code Ann. ' 19.02(b)(1), (2).





[15]Blockburger v. United
States,
284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).





[16]Plunkett, 709 F.2d at 1010.





[17]Id.





[18]See Brown v. State, 955 S.W.2d 276, 284
(Tex. Crim. App. 1997); see also Fazzino v. State, 531 S.W.2d
818, 820 (Tex. Crim. App. 1976) (holding that intent to kill is not an element
of murder charged under theory that accused intended to cause serious bodily
injury and committed an act dangerous to human life that caused death of
individual).





[19]Bigon, 252 S.W.3d at 372.





[20]See Ngo v. State, 175
S.W.3d 738, 753 (Tex. Crim. App. 2005) (Hervey, J., dissenting) (discussing Schad
v. Arizona, 501 U.S. 624, 111 S. Ct. 2491 (1991)).





[21]Jefferson v. State, 189 S.W.3d 305, 311
(Tex. Crim. App.) (citing Ngo, 175 S.W.3d at 745 (Cochran, J., writing
for majority)), cert. denied, 549 U.S. 957 (2006).





[22]Id. at 312 (citations and
quotations omitted).





[23]Id. at 311; majority op. at
11.





[24]Majority op. at 12.





[25]Jefferson, 189 S.W.3d at 315
(Cochran, J., concurring).





[26]Id. at 306 (Hervey, J.,
writing for majority).





[27]Id. at 315B16 (Cochran, J.,
concurring).





[28]Lugo-Lugo, 650 S.W.2d at 81B82.





[29]Plunkett, 709 F.2d at 1010.















 [COMMENT1]

Majority opinion by Justice Livingston; 

Dissenting opinion by Justice Dauphinot